UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| SIBEL D. EDMONDS, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 1:02CV01294 (ESH) |
| | ) | Before Judge Huvelle |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| | ) | |
| Defendant. | ) | |

---

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Plaintiff, Sibel D. Edmonds, by and through counsel, hereby moves for an award of statutory attorneys fees and costs pursuant to Fed. R. Civ. P. 54(d).  The court is referred to the memorandum of law and the attached exhibits that are submitted herewith.

This motion for attorneys fees arises from Plaintiff Mrs. Edmonds' civil action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, and the Privacy Act ("PA"), 5 U.S.C. § 552a, to order the production of documents concerning and related to Mrs. Edmonds and her whistleblower allegations of misconduct, gross mismanagement and other wrongdoing by defendant, Federal Bureau of Investigation ("FBI") its agents, employees and contractors.  Plaintiff presently seeks to recover attorneys fees and litigation costs involved in obtaining disclosure of a number of documents from the FBI and the Department of Justice ("DOJ"). Three hundred forty three pages of documents were produced to Plaintiff pursuant to this Court's December 16, 2002 order granting partial summary judgment to Plaintiff, and ordering the FBI to complete the expedited processing of Plaintiff's requests and release agency records.  Three more documents marked as

1

Edmonds 775, 776, and 777 were later released to Plaintiff after this Court found in its July 23, 2003 order that the FBI had failed to justify its withholding of these documents under FOIA Exemption 2, 5 U.S.C. § 552(b)(2).  Having "substantially prevailed" in her case, by obtaining court orders requiring the expedited processing of her FOIA requests and disclosure of documents, Plaintiff is now entitled to an award of reasonable attorneys' fees and costs.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Statement of Background and Material Facts**

Plaintiff worked as a contract linguist for defendant FBI in the FBI's Washington Field Office.  Her work as a contract linguist centered on counter-terrorism and counter-intelligence investigations.  During the relatively brief period in which Plaintiff worked as a contract linguist for the FBI she alleges she was exposed to the rampant corruption and incompetence within the FBI's language division.   These systemic problems within the language division alleged to have substantially harmed the FBI's counter-terrorism and counter-intelligence operations in the post September 11th period.  However, Plaintiff alleges that her efforts to report these problems to officials within the FBI were met with indifference and hostility.  On March 26, 2002, after Plaintiff's repeated efforts to voice her concerns about the language division's corruption and incompetence, Plaintiff's employment contract with the FBI was terminated.

Following the official termination of her employment contract with the FBI, Plaintiff submitted two FOIA requests to the FBI and the DOJ dated April 19 and April 29, 2002.  Plaintiff's 4/19/02 FOIA request and Plaintiff's 4/29/02 FOIA request, attached as Ex. 2 and Ex. 3 respectively in Plaintiff's Motion for Partial Summary Judgment (Oct. 2, 2002).  In each of her FOIA requests, Plaintiff specifically requested expedited processing.  Ex. 2 and 3 in Plaintiff's Motion for Partial

Summary Judgment (Oct. 2, 2002).  Under 28 C.F.R. § 16.5(d)(4) and 5 U.S.C. § 552(a)(6)(E)(i)-(ii), the DOJ Public Affairs was required to decide within 10 days of receipt of Plaintiff's request of expedited processing whether to grant expedited treatment, and notify the requester of the decision. However, both the FBI and the DOJ not only failed to meet the ten day limit for expedition requests, they also failed to respond to either of the FOIA requests within the administrative twenty day limit for "ordinary" FOIA requests.  In fact, Plaintiff never received any official agency determination regarding whether her expedition requests would be granted or denied from either the FBI or the DOJ prior to commencing this action.  Amended Complaint ¶ 15.

The FBI finally responded to Plaintiff's FOIA request on July 1, 2002, over seventy (70) days after Plaintiff had made her initial request, and over two months outside of the time period set forth in the DOJ's regulations for the agency to submit its response to an expedition request. Defendant FBI's July 1, 2002 letter, from Robert A. Moran, Acting FOIA Section Chief, attached as Ex. 4 in Plaintiff's Motion for Summary Judgment (Oct. 2, 2002).  The FBI's letter responding to Plaintiff's requests acknowledged the fact that Plaintiff had requested expedited processing. Ex. 4 in Plaintiff's Motion for Summary Judgment (Oct. 2, 2002).  However, rather than making any determination as to whether Plaintiff's request would be given expedited processing, the FBI merely, "solicited [her] patience and understanding," and assured her that it would "process [her] request in the most efficient manner possible."  Ex. 4 in Plaintiff's Motion for Summary Judgment (Oct. 2, 2002).

Prior to the FBI's July 1, 2002 written response to Plaintiff's FOIA requests, counsel for Plaintiff supplemented her expedition requests, in writing, on no less than six occasions.  Plaintiff's 6/12/02, 6/19/02, 6/20/02, 7/1/02, 7/9/02, and 7/12/02 supplemental letters with attachments, attached as Ex. 5, 8, 9, 12, 13, and 14, respectively, in Plaintiff's Motion for Summary Judgment

(Oct. 2, 2002).  These supplemental letters provided Defendant FBI with additional information in support of Plaintiff's request to expedite the processing of her requests.  The DOJ's expedition regulations, 28 U.S.C. § 16.5(d)(1)(iv), provide for expedition where there is a strong public interest in the subject matter in issue.  Counsel for Plaintiff specifically invoked these regulations in the letters sent to the FBI in support of Plaintiff's expedition request, and presented facts demonstrating the exceptional public interest in the subject matter of Plaintiff's FOIA requests.  *See*, *e.g.*, Ex. 5 in Plaintiff's Motion for Summary Judgment (Oct. 2, 2002).

The FBI was also alerted to leaks of derogatory information about Plaintiff that were directly related to her whistleblower allegations and the information she sought in her FOIA and Privacy Act requests.  Ex. 5 in Plaintiff's Motion for Summary Judgment, pp. 3-4 (Oct 2, 2002).  Counsel for Plaintiff informed the FBI that on June 8, 2002 the Associated Press had published an article, widely disseminated on its news wire, quoting "government officials, who spoke only on condition of anonymity," about Plaintiff and her whistleblower allegations.  *Id.*  In fact, the Associated Press article contained a statement from an anonymous government official alleging that Plaintiff had been fired "for performance issues."  *Id.*  In a letter dated June 19, 2002 counsel for Plaintiff informed the FBI and DOJ Public Affairs of an additional article about plaintiff and her allegations published by the *Washington Post.*  Ex. 8 in Plaintiff's Motion for Summary Judgment (Oct. 2, 2002).  In so alerting the FBI to these matters counsel for Plaintiff highlighted the necessity of expedited processing of Plaintiff's FOIA requests.  *Id.* at p. 2.

On June 20, 2002 counsel for Plaintiff submitted another supplemental letter to Defendant FBI, with copies to DOJ Public Affairs, in which counsel explained that public interest in Plaintiff's whistleblower allegations continued to grow.  Ex. 9 in Plaintiff's Motion for Summary Judgment

4

(Oct. 2, 2002).  Counsel for Plaintiff cited several publications in the national media, including such prominent media outlets as CNN, the *Chicago Tribune*, and *Slate Magazine*, as well as a floor statement made by United States Senator Leahy which directly addressed Plaintiff's allegations of FBI wrongdoing.[1]  *Id.*  Counsel for Plaintiff noted that both the media publications and the floor statement by Senator Leahy underscored the fact that the subject matter of Plaintiff FOIA requests was of exceptional public interest, and the materials requested by Plaintiff would contribute significantly to the public's understanding of the operations and activities of the government.  *Id.* p. 2.

The public interest in the subject matter of Plaintiff's FOIA requests was strongly supported by the floor statement of Senator Leahy, a copy of which was provided to the FBI by counsel for Plaintiff.  Transcript of Floor Statement of Senator Leahy, attached as Ex. 11 in Plaintiff's Motion for Summary Judgment (Oct. 2, 2002).  In the floor statement, Senator Leahy stated that he considered Plaintiff's whistleblower allegations and the subject matter thereof, which was reflected in her FOIA requests, to be direct evidence suggesting that "in its rush to be up on its translation capabilities after September 11, the FBI may have relaxed both quality control and its security standards." Ex. 11 in Plaintiff's Motion for Summary Judgment, at p. 1 (Oct. 2, 2002).  The Senator also noted that Plaintiff's allegations "raise significant security issues that should be addressed as part of the Inspector General's review of the FBI."  *Id.*  This information in addition to the information provided in Plaintiff's supplemental letters in support of her expedition request directly address the 28 C.F.R. § 16.5 standards concerning media interest and questions of governmental

---

[1]  These articles were provided to the FBI by Counsel for Plaintiff as an attachment to Counsel's June 20 supplemental letter, and are attached to Ex. 9 of Plaintiff's Motion for Summary Judgment.

integrity.  Plaintiff had thus presented the FBI with all of the information it could have reasonably required to reach a decision as to whether to grant her expedition requests prior to seeking an order from this Court on the issue of her expedition requests.

It was only after counsel for Plaintiff provided the FBI with all of this additional information demonstrating that Plaintiff's FOIA requests concerned matters of exceptional public interest, and directly related to questions of the government's integrity that the FBI responded to Plaintiff's requests with its July 1, 2002 letter.  However, in this letter the FBI utterly failed to address the issue of whether Plaintiff's requests would be granted expedited processing, and, as was previously stated, merely "solicited her patience."  Ex. 4 in Plaintiff's Motion for Partial Summary Judgment (Oct. 2, 2002).

In response to the FBI's July 1, 2002 letter, Plaintiff's counsel submitted three additional supplemental letters, dated July 1, 9 and 12, 2002, to the FBI with copies to DOJ Public Affairs.  Ex. 12, 13, and 14 respectively in Plaintiff's Motion for Partial Summary Judgment (Oct. 2, 2002).  These letters re-iterated the strong public interest in the subject matter of Plaintiff's FOIA requests and stressed the fact that the information being sought in Plaintiff's FOIA requests was the subject of widespread and continuing media interest both nationally and internationally.  *Id.*

Additionally, by letter dated May 22, 2002, Plaintiff filed an administrative appeal of the Defendant's denial or constructive denial of Plaintiff's April 19, 2002 FOIA request with the DOJ Office of Information and Privacy ("OIP").  Amended Complaint ¶10.  Plaintiff filed a second administrative appeal on June 12, 2002, this time challenging Defendant's denial or constructive denial of Plaintiff's April 29, 2002 FOIA request with the DOJ OIP.  Amended Complaint ¶11.  Plaintiff supplemented these administrative appeals by sending a copy of her 6/12/02, 6/19/02,

6/20/02, 7/1/02, 7/9/02, and 7/12/02 supplemental letters to the DOJ OIP.  Amended Complaint ¶ 12.

On July 10, 2002 DOJ OIP responded to Plaintiff's administrative appeal letter dated May, 22, 2002

stating that Plaintiff may treat its response as a denial of Plaintiff's appeal and bring an action in

federal court.  Amended Complaint ¶ 14.

After repeated efforts on behalf of Plaintiff and her counsel to obtain expedited processing

of her request failed and the FBI still failed to make a substantive determination as to Plaintiff's

FOIA requests, Plaintiff considered her FOIA requests for expedited processing to be constructively

denied.  Furthermore, because the FBI and the DOJ Public Affairs failed to make a determination

on Plaintiff's FOIA request within the applicable time limits, Plaintiff was deemed to have exhausted

all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).  Plaintiff then filed a Complaint in this

Court on June 27, 2002, seeking disclosure of the documents requested in Plaintiff's two requests

under FOIA and the Privacy Act.  Additionally, on July 15, 2002, Plaintiff filed an Amended

Complaint requesting that "Defendant should be ordered to expedite the processing of Plaintiff's

FOIA Requests."  Amended Complaint, ¶ 22.

On September 3, 2002, the Court issued an order noting that the Defendant appeared to raise

grounds for dismissal of the case in its August 23, 2002 Answer to Plaintiff's Amended Complaint,

but that it had not filed a dispositive motion in this case.  Order (Sept. 3, 2002).  The Court's order

therefore required Defendant, within thirty (30) days, to either file a dispositive motion or file a

schedule upon which it would produce the documents subject to Plaintiff's FOIA requests.  *Id.*

Defendant ultimately filed a schedule for disclosure of documents to Plaintiff on October 3, 2002.

The schedule listed April 1, 2003 as the earliest possible release date for the documents.

Defendant's Schedule for Disclosure of Documents to Plaintiff (Oct. 3, 2002).

On October 2, 2003, Plaintiff submitted a Motion for Partial Summary Judgment seeking expedited processing of Plaintiff's requests.   On October, 23, 2002 Defendant submitted its Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross Motion for *Open America* Stay on the grounds that it was exercising due diligence in responding to Plaintiff's requests and alleging there were exceptional circumstances that prevented it from processing Plaintiff's requests in a timely manner.

This Court granted Plaintiff's Motion for Partial Summary Judgment on December 3, 2002 and denied Defendant's Motion for *Open America* Stay, finding that expedited processing of Plaintiff's FOIA requests was appropriate because she had shown that her allegations (1) have been the subject of widespread and exceptional media interest, and (2) call into question "the integrity of the ... [FBI] which affect[s] public confidence" in that institution.   Order (Dec. 3, 2002).   On December 16, 2002 this Court ordered Defendant to complete the expedited processing of Plaintiff's FOIA request and provide Plaintiff with all documents as to which no exemption was claimed by January 31, 2003.   Order (Dec. 13, 2002).

In response to the Court's December 13, 2002 order, Defendant released, on February 10, 2003, 343 of 1,486 pages of the documents responsive to Plaintiff's FOIA requests.   Defendant withheld the remainder of the responsive material pursuant to FOIA Exemptions 1, 2, 5, 6, 7(A), 7(C), 7(D), and 7(E), and Privacy Act Exemptions (j)(2), (k)(1), and (k)(2).   On March 3, 2003 Defendant released a second set of documents to Plaintiff, which, along with copies of the 343 pages originally released to Plaintiff, included Deleted Page Information Sheets ("DPIS's") to show where deleted pages were withheld in their entirety and the basis for the various withholdings.   The documents and DPIS's were numbered consecutively beginning with Edmonds-1 and ending with

Edmonds-1486.  Defendant also submitted to the Court the declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division at FBI Headquarters (the "Hardy Declaration"), an eighteen-page in camera supplement to the Hardy Declaration, and a detailed in camera *Vaughn* index of 225 pages to further explain its withholdings pursuant to Exemptions 1 and 7(D).  However, the DOJ failed to comply with the Dec. 16, 2002 Order, by refusing to provide plaintiff with a *Vaughn* index for the documents withheld.

On March 5, 2003, Plaintiff's counsel advised Defendant that as a result of Defendant's failure to provide a *Vaughn* index, Plaintiff wished to challenge all of Defendant's withholdings. Thereafter, Defendant filed a Motion for Summary Judgment arguing that its withholdings pursuant to FOIA Exemptions 1, 2, 5, 6, 7(A), 7(C), 7(D), and 7(E) were proper and that the remainder of Plaintiff's FOIA complaint should be dismissed.

On July 23, 2003 this Court issued a decision and order granting Defendant's Motion for Summary Judgment with respect to Exemptions 1, 6, 7(A), 7(C), 7(D), and 7(E).  *Edmonds v. FBI*, 272 F.Supp.2d 35, 59 (D.D.C. 2003).  The Court also granted Summary Judgment with respect to all documents withheld pursuant to FOIA Exemption 2, except for the documents marked as Edmonds-775, 776, and 777.  *Id.*  The Court found that Defendant had "failed to explain the rationale for withholding these documents under Exemption 2," and required the Defendant to file an affidavit describing the documents marked as Edmonds-775, 776, and 777 and justifying their withholding under FOIA Exemption 2.  *Id.* at 50.

Pursuant to the Court's July 23, 2003 decision and order, Defendant filed the Declaration of Carol L. Keeley on August 8, 2003.  Simultaneously, as noted in the declaration of Carol Keeley, Defendant released the document numbered Edmonds-777.  In her August 8, 2003 Declaration, Ms.

Keeley claimed that Edmonds-775 and 776 were internal review procedures for the review of document translations that reflected quality control procedures in a field office, and were of no genuine and significant public interest.  Declaration of Carol L. Keeley (Aug. 7, 2003), at pp. 2-3.

On September 29, 2003 Plaintiff filed a responsive brief, stating her objections to the Defendant's continued withholding of documents Edmonds-775 and 776.  Plaintiff noted that in order to justify its withholding of Edmonds-775 and 776 under Exemption 2, Defendant must demonstrate (1) that the information withheld is "used for predominately internal purposes," and (2) "that either disclosure may risk circumvention of agency regulation, or the material relates to trivial administrative matters of no genuine public interest."  Plaintiff's Objections to Defendant's Continued Withholdings and Response to Defendant's Notice of Filing of Declaration of Carol L. Keeley (hereinafter "Objections to Continued Withholdings"), at p. 3 (Sept. 29, 2003) (internal quotations and citations omitted).  However, rather than presenting the court with a detailed statement of facts on these issues in the Declaration of Carol L. Keeley, the Defendant only alleged in the most conclusory fashion that the information in Edmonds-775 and 776 is internal and of no genuine and significant public interest.  Keeley Decl., at p. 2-3 (Aug. 7, 2003).  Plaintiff argued forcefully in her brief that Defendant's "quality control" procedures for translations (which were outlined in Edmonds-775 and 776) were not a trivial administrative matter, but rather were highly relevant to the public confidence in the Defendant agency.  Plaintiff also pointed out that there had been extensive national news media coverage of her whistleblower allegations of deficiencies in the Defendant's "quality control" procedures for the translations produced by its language division. *See,* Objections to Continued Withholdings, at pp. 4-6 (Sept. 29, 2003).  Additionally, Senators Patrick Leahy and Charles Grassley had raised serious questions related to the Defendant's review of the

quality of its translations to the Department of Justice Inspector General.  *Id.* at 5-6.

Thus, Plaintiff clearly demonstrated that, as a result of questions raised by her allegations of wrongdoing within the FBI's language division, the information contained in the documents numbered Edmonds-775 and 776 did not relate to mere trivial administrative matters of no genuine public interest.  Rather, these documents directly related to questions as to the integrity of the FBI that affect the public confidence in that institution.  As such, it was clear that Defendant was not justified in withholding Edmonds-775 and 776 pursuant to FOIA Exemption 2.

On October 7, 2003, a little over a week after Plaintiff had filed her Objections to Continued Withholdings, the FBI effectively conceded that Edmonds-775 and 776 could not properly be withheld by releasing the documents to Plaintiff.  These documents in addition to the 343 pages released by the FBI on February 10, 2003 related to the subject matter of Plaintiff's allegations of corruption, wrongdoing, and serious deficiencies in quality control procedures for the translations produced by the FBI's language division, as well as her well publicized allegations of deficiencies in the FBI's security standards.

On October 17, 2003 this Court entered its final order and dismissed Plaintiff's remaining claims with prejudice.  Plaintiff now brings the instant motion to recover her reasonable attorneys' fees and costs for the work directly related to the production of the 343 pages of documents disclosed by the FBI pursuant to this Court's December 16, 2002 order, as well as the documents labeled Edmonds-775, 776 and 777.

## ARGUMENT

Pursuant to Section 552(a)(4)(E) of FOIA, a District Court may "assess against the United States reasonable attorneys' fees and other litigation costs reasonably incurred in any case under this

section in which the complainant has substantially prevailed.  5 U.S.C. § 552(a)(4)(E) (1982).

Federal courts have adopted a two-step approach to determining whether an award of attorneys' fees

is proper in cases brought under FOIA.  *Church of Scientology of California v. Harris*, 653 F.2d 584,

587 (D.C. Cir. 1981).   First, the complainant must show that she is "eligible" for an award of

attorneys' fees by demonstrating that she substantially prevailed.  *Id.*  Second, the complainant must

show that she is entitled to an award of attorneys fees.  *Id.*  Once the court has determined that a

complainant is entitled to attorneys' fees, the court must calculate the award of fees based on the

"lodestar," which is the number of hours the lawyers reasonably spent on the case multiplied by the

lawyers' hourly rates.  *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983).

## I.   PLAINTIFF IS ELIGIBLE FOR AN AWARD OF HER REASONABLE ATTORNEYS' FEES AND COSTS FOR HAVING SUBSTANTIALLY PREVAILED ON HER MOTION FOR PARTIAL SUMMARY JUDGMENT AND AS TO DOCUMENTS NUMBERED EDMONDS-775, 776 AND 777

Before a court may grant an award of attorneys fees to a FOIA plaintiff, the court must first

determine whether the plaintiff is "eligible" for an award of fees under Section 552(a)(4)(E).  *Church*

*of Scientology*, 653 F.2d at 587.  A FOIA plaintiff is eligible for a award of attorneys' fees if she has

"substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  In the wake of the Supreme Court's decision in

*Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*,

532 U.S. 598, 121 S.Ct. 1835 (2001), the test for whether a plaintiff has "substantially prevailed,"

for purposes of determining eligibility for attorneys' fees under FOIA has undergone substantial

changes.

Prior to the United States Supreme Court's decision in *Buckhannon*, it was widely accepted

that a plaintiff could be found to have "substantially prevailed" for purposes of collecting attorneys'

fees under FOIA even where no judgment had been rendered in her favor by the court, so long as the institution and prosecution of litigation caused the governmental agency in question to release documents obtained by the plaintiff during the pendency of the litigation.  *See*, *e.g.*, *Church of Scientology*, 653 F.2d at 587-88 ("Our cases have established that this is largely a question of causation - did the institution and prosecution of the litigation cause the agency to release the documents obtained during the pendency of the litigation"); *Vermont Low Income Advocacy Council v. Usery*, 546 F.2d 509, 513 (2d Cir. 1976) (noting that attorney fees could be awarded even where documents requested by the plaintiff had been voluntarily released by the government prior to judgment).  Under this so-called "catalyst theory" a plaintiff could recover her attorneys' fees even in the absence of a court order, where she could show, "that the prosecution of the action could reasonably be regarded as necessary to obtain the information ... and that a causal nexus exists between that action and the agency's surrender of the information."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (1984) (quoting *Cox v. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir 1979); *Church of Scientology*, 653 F.2d at 587-88).  In fact, the D.C. Circuit went so far as to dismiss as "having no merit" the contention that a plaintiff could be precluded from recovering attorneys' fees under Section 552(a)(4)(E) of FOIA by a defendant's voluntary release of requested documents.

Courts based this understanding of the attorney fee provisions of Section 552(a)(4)(E) largely on their understanding of the legislative intent of Congress in enacting FOIA as expressed in the legislative history of the act.  *See Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364-65 (D.C. Cir. 1977).  It is clear from the legislative history of Section 552(a)(4)(E) that Congress sought to encourage private citizens, who would ordinarily find the barriers of court costs and attorneys' fees insurmountable, to bring to the attention of the courts any unlawful withholding of information by governmental

13

agencies. *Cuneo v. Rumsfeld*, 553 F.2d at 1365, citing S.Rep. No. 93-854, 93d Cong., 2d Sess. at 17 (1974). As our Court of Appeals noted, "the effectiveness of this incentive would be greatly diminished if the complainant was forced to bear the costs whenever the government chose to release the requested information during the pendency of the action but prior to a judgment or court order." Furthermore, the legislative history of FOIA also indicates that to some extent, FOIA's attorney fee shifting provisions were meant to serve a punitive purpose as well. Senate Report No. 93-854 at 17 (quoting *Hearings Before the Subcommittee on intergovernmental Relations of the committee on Government Operations and the Subcommittee on Separation of Powers and Administrative Practice and Procedure of the Committee on the Judiciary*, Vol I at 211) ("if the government had to pay legal fees each time it lost a case, it would be much more careful to oppose only those areas it had a strong chance of winning"). Given the fact that FOIA's fee provision was designed to facilitate the ability of private citizens to challenge unlawful withholding of information by governmental agencies, and to punish the governmental agencies where their refusal to release documents was unreasonable, there was substantial basis for the conclusions of the courts in *Vermont Low Income Advocacy Council* and *Cuneo v. Rumsfeld* that the attorney fee provisions of Section 552(a)(4)(E) should be read broadly, so as to allow for recovery of attorneys' fees even where a final judgment had not been entered in favor of the plaintiff.

However, in *Buckhannon* the Supreme Court cast substantial doubt on the continuing viability of the "catalyst theory" in cases involving a plaintiff's eligibility for an award of attorneys' fees. *Buckhannon*, 532 U.S. at 603-04, 121 S.Ct. at 1839-40. In *Buckhannon*, the West Virginia Office of Health Facility Licensure and Certification ("OHFLC") ordered the closure of the plaintiff's residential care facilities for violating state law. The plaintiff brought suit in federal court

seeking a judgment declaring the state law at issue contrary to the Fair Housing Amendments Act (FHAA) and the Americans with Disabilities Act (ADA). Approximately one month after the district court ruled that the plaintiff could dismiss its damages claims and proceed on its claims for injunctive relief, the West Virginia legislature, at the request of the OHFLC, repealed the challenged provision. The district court then declared the plaintiff's suit moot. The plaintiff then filed a petition for an award of attorneys fees, arguing that it qualified as a "prevailing party" for purposes of the fee shifting provisions of the FHAA and ADA under the catalyst theory because its litigation had prompted the legislative response that provided the practical effect the plaintiff sought by instituting its civil suit. The district court denied the plaintiff's petition, and the case was ultimately appealed to the United States Supreme Court.

The Supreme Court affirmed the district court's decision, and held that the "catalyst theory" was not a permissible basis for the award of attorneys' fees under the FHAA and ADA. *Buckhannon*, 532 U.S. at 610, 121 S.Ct. at 1843. In analyzing statutes with fee shifting provisions authorizing awards of attorneys' fees to "prevailing parties," the Supreme Court defined a "prevailing party" as "one who has been awarded some relief by the court." *Id.,* 532 U.S. at 603, 121 S.Ct. at 1839 (citing Black's Law Dictionary 1145 (7th ed. 1999)). The Court therefore rejected the "catalyst theory" as a basis for a fee award because it "allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.,* 532 U.S. at 605, 121 S.Ct. at 1840.

In an effort to clarify the meaning and implications of the decision in *Buckhannon* the court went on to state that, "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604, 121 S.Ct. at 183. Although this statement indicates

15

that, under *Buckhannon*, a plaintiff may not recover attorneys fees in the absence of an enforceable judgment or court ordered consent decree, the Court did hold out one theory that might provide a means of recovering attorneys fees for plaintiffs who have "prevailed" as a result of the defendant's capitulation.  As the Supreme Court noted, "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.,* 532 U.S. at 608-09, 121 S.Ct. at 1842-43.  Thus, the Supreme Court held open the possibility that a plaintiff could recover attorneys' fees where the government relinquishes documents prior to a court order, so long as there remain grounds for the court to issue a ruling for the plaintiff on the merits.

In *Oil, Chemical and Atomic Workers International Union, AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 456-57 (D.C. Cir. 2002), the D.C. Circuit found that *Buckhannon* applied to the fee-shifting provisions of FOIA, and held that "in order for plaintiffs in FOIA actions to become eligible for an award of attorneys' fees, they must have 'been awarded some relief by a court,' either in a judgment on the merits or in a court-ordered consent decree.'" *Oil, Chemical and Atomic Workers Union*, 288 F.3d at 456-57 (quoting *Buckhannon*, 532 U.S. at 603, 121 S.Ct. at 1839).

After the Supreme Court's decision in *Buckhannon* it is clear that a FOIA plaintiff seeking attorneys' fees must at the very least show that some judicial action has been taken in the lawsuit that has resulted relief available under the statute, or in the release of documents.  While *Oil, Chemical and Atomic Workers Union* holds that a FOIA plaintiff may qualify as a prevailing party where documents are produced to her pursuant to a judgment on the merits or a court-ordered consent decree, the decision does not foreclose the possibility of an award of attorneys' fees in other cases. Justice Scalia in his concurring opinion to *Buckhannon*, which was joined by Justice Thomas,

16

acknowledged that there is support for an award of attorneys fees and costs, despite the absence of a judgment in favor of the plaintiff, where a defendant acknowledges the merits of the plaintiff's case. *Buckhannon*, 532 U.S. at 612-13, 121 S.Ct. at 1844 (Scalia, J. *concurring*). Given the fact that all four of the dissenting Justices in *Buckhannon* argued forcefully for the adoption of a more expansive definition of "prevailing parties" than that adopted by the other Justices in the majority or Justice Scalia's concurrence, there are compelling reasons to believe that a plaintiff may be said to have "substantially prevailed," even when the court has not returned a judgment in her favor, if the defendant acknowledges the merits of the plaintiff's case.

This definition of a "substantially prevailing" party finds additional support in the legislative history to FOIA. The legislative history of Section 552(a)(4)(E) indicates that Congress sought to encourage private citizens, who would ordinarily find the barriers of court costs and attorneys' fees insurmountable, to bring legitimate claims under FOIA to challenge any unlawful withholding of information by governmental agencies. S.Rep. No. 93-854, 93d Cong., 2d Sess. at 17. This incentive would be greatly reduced were the court to hold that a plaintiff in a FOIA claim could be denied attorneys' fees and costs even where the defendant released requested documents to the plaintiff, acknowledging the merits of the plaintiff's case, because the court had not returned a judgment against the defendant.

Plaintiff has established that she is eligible for an award of her reasonable attorneys' fees and costs for all work involved in the production of the 346 pages of material responsive to her two FOIA requests that the Defendant FBI was compelled to release as a result of this litigation. There are two bases on which this Court may find that Plaintiff has "substantially prevailed" as to her FOIA claims.

First, because the 343 documents released by the FBI on February 10, 2003 were provided to Plaintiff pursuant to this Court's various order granting Plaintiff relief on her FOIA expedition claim, she has met the basic test for a substantially prevailing party under *Buckhannon* and *Oil, Chemical and Atomic Workers* as to these documents.  *See,* Order (Sept.  3, 2002) (requiring defendant to file a schedule stating the date documents would be released); Order (Dec.  3, 2002) (granting plaintiff's motion for partial summary judgment and denying defendant's motion for stay); Order (Dec.  16, 2002) (establishing deadlines for expedited processing).

Second, this Court may properly find that Plaintiff substantially prevailed in procuring the release of documents numbered Edmonds-775, 776 and 777, because the record demonstrates that as a result of the litigation of this matter the FBI functionally reversed its position as to the exemption of these documents from release under FOIA Exemption 2, and because the Court held that the defendant had failed to demonstrate its burden under Rule 56 to justify the withholding of these documents as a matter of summary judgment.  *See,* Order (July 23, 2003).

A.    **Plaintiff Is Eligible For An Award Of Attorneys' Fees For Prevailing On The Merits Of Her October 2, 2002 Motion For Partial Summary Judgment.**

Plaintiff is eligible for an award of her reasonable attorneys' fees and costs involved in obtaining disclosure of the 343 pages of information released by the FBI in response to this Court's December 3, 2002 Order granting Plaintiff's motion for partial summary judgment on the FOIA expedition issue and the Court's subsequent December 16, 2002 Order.  Plaintiff succeeded in obtaining court orders requiring the Defendant to establish a schedule to complete the processing of Plaintiff's FOIA requests, to expedite the processing and release of those FOIA requests and to provide her with all documents as to which no exemption is being claimed by January 31, 2003. *See,*

Order (Sept. 3, 2002); Order (Dec. 3, 2002); Order (Dec. 16, 2002).  Ultimately, the FBI produced

343 pages of responsive materials pursuant to these court orders.  This is sufficient to meet the basic

test set forth in *Buckhannon* that to qualify as a "prevailing party" under a fee shifting statute, "a

plaintiff [must] receive at least some relief on the merits of his claim."  *Buckhannon*, 532 U.S. at

603-04, 121 S.Ct. at 1840 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672 (1987)).  It

is thus clear that these court orders altered the legal relationship between Plaintiff and the Defendant,

and the Court required the FBI to complete a task which it had delayed for over seven months, the

expedited processing of Plaintiff's FOIA requests.  Furthermore, these court orders required the

agency to take action that resulted in the release over 300 documents to Plaintiff.

Generally, in the context of cases involving fee shifting provisions similar to those of FOIA,

once a plaintiff has established that she is a "prevailing party," regardless of her degree of success,

she may be deemed to be eligible for an award of attorneys fees.  *See, e.g.*, *Farrar v. Hobby*, 506

U.S. 103, 113 S.Ct. 566 (1992) (holding that a plaintiff who wins only nominal damages may

nonetheless qualify as a "prevailing party" under 42 U.S.C. § 1988).  Indeed, at least one district

court has adopted this very approach with regard to the interpretation of who qualifies as a

"substantially prevailing" party under FOIA.  The court in *Cook v. Watt*, 597 F.Supp. 552, 555 (D.

Alaska 1984), found that a plaintiff who had obtained the release of only one of nineteen requested

documents had nonetheless "substantially prevailed," and in so finding noted that a released to

withheld ratio, while relevant to the amount of entitlement, is not relevant to the question of a

plaintiff's eligibility for attorneys' fees.  Thus, the fact that Plaintiff succeeded in obtaining court

orders, pursuant to which 343 of 1486 pages of documents were released by Defendants, provides

sufficient basis for holding that Plaintiff is entitled to her reasonable attorneys fees.

19

Although some cases suggest that prevailing party status may be denied to a Plaintiff where the Defendant agency is required to release documents that are of only minimal significance, *Braintree Electric Light Department v. DOE*, 494 F.Supp. 287, 291 (D.D.C. 1980), the documents released to Plaintiff pursuant to the Court's December 16, 2002 order were not of minimal significance. In fact, this Court acknowledged in its Order that the documents that were the subject of Plaintiff's FOIA requests, a full 343 pages of which were released to her, "relate to matters of wide public concern that directly implicate 'possible questions about the government's integrity which affect a public confidence.'" Order, at p. 7 (Dec. 3, 2002). The documents ultimately released to Plaintiff directly related to her allegations of misconduct, incompetence and gross mismanagement, and therefore directly implicated the integrity of the defendant agency. Given the serious nature of the questions raised within the national news media and the United States Senate regarding the Plaintiff's whistleblower allegations, it cannot be argued that the documents released to Plaintiff, in which she finds support for her allegations, are of minimal significance.

Additionally, in bringing her suit under FOIA, Plaintiff was able to compel the Defendant to comply with the law as well as its own regulations regarding the processing of FOIA expedition requests. This mere fact alone may serve as the basis for an award of attorneys' fees. *See Exner v. FBI*, 443 F.Supp. 1349, 1353 (S.D. Cal. 1978) (court found plaintiff had "substantially prevailed" by obtaining court-ordered expedited processing of FOIA request) *aff'd*, 612 F.2d 1202 (9th Cir. 1980). It is well settled that even in cases were no documents are released by a defendant agency, a plaintiff may be deemed to have "substantially prevailed" if the suit compels an agency to comply with the law. *Halperin v. Dep't of State*, 565 F.2d 699, 706 n. 11 (D.C. Cir. 1977). As such, Plaintiff has "substantially prevailed," because the institution of her civil suit has forced the FBI to

comply with the law and with its own guidelines regarding FOIA expedition requests which had been ignored prior to entry of this Court's orders.  In this case, Plaintiff substantially prevailed just as the court noted in *Exner* that  "plaintiff acted as a private attorney general in vindicating an important public policy," by obtaining court-ordered expedited processing of her FOIA requests , thereby establishing that "there are some exceptional cases where the government must specially process requests for information on a priority basis."  *Exner*, 443 F.Supp. at 1353, *aff'd*, 612 F.2d 1202 (9th Cir. 1980).

      **B.**    **Plaintiff Is Also Eligible For An Award Of Attorneys' Fees For Obtaining The Release Of The Documents Numbered Edmonds-775, 776, And 777, Previously Withheld By Defendant FBI.**

Following this Court's grant of summary judgment to Plaintiff, and Defendant's subsequent release of 343 of the 1,486 pages of documents identified by Defendant as responsive to Plaintiff's FOIA requests, Defendant moved for summary judgment on the remaining 1,143 documents which it continued to withhold on the grounds that were exempt from disclosure under FOIA.  In an opinion dated July 23, 2003, this Court found in favor of Defendant as to all the withheld documents except for the documents numbered Edmonds-775, 776, and 777, which were all being withheld by the FBI pursuant to FOIA Exemption 2.  The Court held that Defendant had failed to come forth with a reasonable explanation for its continued withholding of these documents.  The Court therefore required the defendant to provide additional information to justify the continued withholding of these three documents.

Pursuant to the Court's July 23rd Order, the Defendant, after further review, decided to release the document numbered Edmonds-777, but it submitted a supplemental Declaration in support of its continued withholding of Edmonds-775 and 776 pursuant to FOIA Exemption 2.

Defendant's supplemental affidavit, however, contained little more than a cursory and wholly unsupported statement that the documents sought by Plaintiff were "internal and of no genuine and significant public interest."  Keeley Decl. at 3.

In response to this supplemental affidavit, Plaintiff argued that although the documents in question were indeed "predominantly internal," they were nonetheless not subject to FOIA Exemption 2  because the agency could not satisfy the governing standard by showing that "disclosure may risk circumvention of agency regulation, or the material relates to trivial administrative matters of no genuine public interest."  *See, e.g.,* Mem. Op., p. 15 (July 23, 2003) citing *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  Plaintiff pointed out in her objections to these continued withholdings that Defendant had failed to cite any adverse consequence from the release of the documents numbered Edmonds-775 and 776.  Furthermore, she noted that given the intense media publicity behind her whistleblower allegation of the FBI's lack of quality control procedures for its language division, Defendant could put forth no reasonable basis for concluding that Edmonds-775 and 776, which reflected the FBI's quality control procedures for document translations, merely concerned trivial administrative matters of no genuine interest to the public.

Shortly after receiving Plaintiff's objections to the Keeley Affidavit, Defendant FBI released Edmonds-775 and 776, in order to avoid further litigation of the matter.  Upon informing the court of its release of these documents, the Defendant moved for Summary Judgment on the grounds that Plaintiff's case was moot.  The Court then granted Defendant's Motion for Summary Judgment and dismissed Plaintiff's case.

Plaintiff substantially prevailed as to the documents numbered Edmonds-775, 776, and 777

despite the fact that she did not obtain a court order specifically requiring the Defendants to surrender these documents.  The D.C. Circuit Court of Appeals has held in one case that a plaintiff will not qualify as a prevailing party where she merely survives a motion to dismiss without ultimately prevailing on the merits at trial.  *Oil, Chemical and Atomic Workers*, 288 F.3d at 459 (citing *Hanrahan v. Hampton*, 446 U.S. 754, 758, 100 S.Ct. 1987, 1989-90 (1980)).  However, there are several notable distinctions between the facts of *Oil, Chemical and Atomic Workers* and Plaintiff's case with respect to the FBI's release of Edmonds 775, 776 and 777.

In *Oil, Chemical and Atomic Workers*, the plaintiff union brought suit under FOIA to compel the disclosure of several documents related to a proposed plan to privatize the government owned United States Enrichment Corporation (USEC), whose employees were represented by the union. The government moved to dismiss the suit on the grounds that the court's jurisdiction ended when USEC ceased to be a public entity.  Rather than granting the motion, the district court substituted the Department of Energy as the defendant on the grounds that the Privatization Act called for the government to fulfill obligations incurred by USEC.  After the plaintiffs survived this motion to dismiss the government released "substantial amounts of material," and in December of 1999 the parties filed a Stipulation and Order of Dismissal dismissing the claims with prejudice, although reserving the union's right to seek attorneys' fees.  This stipulation was endorsed by the district court.  When the parties proved unable to resolve the attorneys' fees issue amongst themselves, the union filed an application for fees with the district court.  The court found in favor of the union on its fee application and ordered payment of its attorneys' fees.

Shortly after the government noted its appeal, the Supreme Court issued its ruling in *Buckhannon*, holding that a plaintiff must obtain some judicially sanctioned relief altering the legal

23

relationship between the parties to qualify as a "prevailing party" for purposes of obtaining an award of attorneys' fees.  Finding the reasoning of *Buckhannon* applicable to the fee shifting provisions of FOIA, the D.C. Circuit held that the district court erred in awarding the union its attorneys' fees. Focusing on *Buckhannon*'s requirement that there be some change in the legal relationship between the parties our Court of Appeals held that merely surviving a motion to dismiss, because it does not alter the legal relationship between the parties, is not sufficient to confer "prevailing party" status on a litigant.

There are several important distinctions between the decision in *Oil, Chemical and Atomic Workers* and Plaintiff's case presented here.  In *Oil, Chemical and Atomic Workers* the court never reached any decision whatsoever as to the merits of the Defendants' case, because prior to the voluntary dismissal of the case by the parties the only substantive proceeding in the case involved a motion to dismiss for lack of jurisdiction.  By contrast, in this case, the Court actually consider Defendant's arguments in support of granting summary judgment upholding its withholding of the documents numbered Edmonds-775, 776, and 777.  This Court found that Defendant had failed to sustain its burden on summary judgment for its withholding of these three documents.  Thus, unlike the court in *Oil, Chemical and Atomic Workers*, this Court had an opportunity to consider the merits of the argument upon which Defendant based its motion for summary judgment and found it to be lacking.  In denying Defendant's motion for summary judgment with regard to these three documents, the Court in essence acknowledged that the Defendant had failed to come forth with sufficient information to outweigh the plaintiff's case for obtaining release of these documents.  In this case, Plaintiff substantially prevailed on the issue of the applicability of FOIA Exemption 2, because the effect of the Court's July 23, 2003 ruling on Defendants' motion for Summary Judgment

as to Edmonds-775, 776, and 777 was to require the Defendant to surrender these documents to the Plaintiff should it fail to come forth with a sufficient justification for withholding the documents. Consequently, these documents were actually released as a result of the Court's order denying summary judgment with respect to these three records.

Additionally, the circumstances under which Defendant surrendered the documents numbered Edmonds 775 and 776 further support the conclusion that Plaintiff had substantially prevailed as to the applicability of FOIA Exemption 2. After this Court held that the Defendant had failed to adequately justify its withholding of Edmonds 775, 776, and 777 pursuant to FOIA Exemption 2, the Defendant submitted an affidavit in support of its continued withholding of two of these documents Edmonds-775 and 776. This affidavit attempted to justify the FBI's continued withholding of these documents with little more than the unsupported assertion that the documents were internal and of no genuine and significant public interest. Plaintiff was required to devote additional litigation resources to respond to this affidavit with a detailed and persuasive explanation of the Defendant's utter failure to meet the legal standards for justifying the continued withholding of these two records under FOIA Exemption 2 as well as the legal standards adopted by this Court in its July 23, 2003 Order. *See,* Order, p. 15 (July 23, 2003), citing *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Plaintiff demonstrated, by referring to several major news media publications regarding her whistleblower allegations, all of which were directly related to the information in Edmonds-775 and 776, that there was a strong public interest in the documents she sought, and that therefore the FBI had no reasonable justification for continuing to withhold these documents.

Only after Plaintiff filed yet her supplemental objections to continued withholdings, but prior

to this Court's final ruling on the applicability of Exemption 2 to Edmonds-775 and 776, Defendant decided to release the two remaining documents at issue.  Although the FBI maintained that its release of these two documents was not an admission that Exemption 2 did not apply, the fact that it waited until the issue of the applicability of Exemption 2 had been fully briefed, and after this Court had already found that defendant had not satisfied its burden under Exemption 2 when the July 23rd Order was issued, strongly indicates that the government elected to disclose the documents in order to avoid a finding for the Plaintiff on the issue of whether the Defendant could properly withhold Edmonds-775 and 776.

At the very least this eleventh hour capitulation by the government must be recognized as an admission as to the merits of Plaintiff's claim.  Justice Scalia, who set forth the most narrow reading of the decision in *Buchkannon*, noted that there remains support for holding that where a defendant acknowledges the merits of the plaintiff's case, although no final judgment is rendered, the plaintiff may be deemed a "prevailing party."  *Buckhannon*, 532 U.S. at 612-14, 121 S.Ct. 1844-45 (Scalia, J. *concurring*).  Justice Scalia noted that an acknowledgment by the defendant of the merits of the plaintiff's case is essentially the equivalent of the judicial finding as to the merits of the plaintiff's case that *Buckhannon* requires for one to be eligible for an award of attorneys' fees.  *Id.*  In the present case it is clear that by surrendering the documents in question after all briefs and affidavits on the applicability of Exemption 2 had been submitted, and after the Court had already issued the July 23rd Order denying summary judgment on these two records and requesting supplemental clarification, the Defendant acknowledged the merits of Plaintiff's case.

As no further briefing had been scheduled on this issue beyond the Plaintiff's filing her objections to continued withholding, the Defendant's October 7, 2003 letter releasing the documents

provides no logical reason for the Defendant's sudden election to release the documents. Seeing that a judicial determination as to the unreasonable nature of Defendant's continued withholding of the documents was likely inevitable, the agency obviously took a preemptive step to prevent Mrs. Edwards from obtaining a court order stating as much. Regardless of this fact, Defendant's actions in releasing these two documents effectively served as an acknowledgment of the merits of Mrs. Edwards's case, thereby making her eligible for an award of attorneys' fees pursuant to this provision.

## II.    PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES AND COSTS FOR ALL DOCUMENT RELEASES AS TO WHICH SHE SUBSTANTIALLY PREVAILED

Once a FOIA plaintiff has demonstrated that she has substantially prevailed in her claims and is therefore eligible for attorneys' fees, the court must then determine whether the plaintiff is actually entitled to an award of fees. This decision rests within the discretion of the district court. *GMRI, Inc. v. EEOC*, 149 F.3d 449, 452 (6th Cir. 1998); *Tax Analysts v. DOJ*, 965 F.2d 1092, 1093 (D.C. Cir. 1992). In determining whether a substantially prevailing plaintiff is entitled to attorneys' fees, federal courts must consider all relevant factors, and "must be careful not to give any particular factor dispositive weight. *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704, 714 (D.C. Cir. 1977). In practice, courts have adopted a four part balancing test for determining whether to award a prevailing plaintiff her attorneys' fees. *Church of Scientology*, 653 F.2d at 590.

The four criteria examined by the courts are: (1) the benefit to the public deriving from the case; (2) the commercial benefit of the release to the plaintiff; (3) the nature of the plaintiff's interest; and (4) the reasonableness of the agency's withholding. *Church of Scientology*, 653 F.2d at 590

(citing *Fenster v. Brown*, 617 F.2d 740 (D.C. Cir. 1979).[2]

The first of the four criteria to be analyzed by the court is the benefit to the public arising from the plaintiff's case.  In analyzing the public benefit factor, courts must determine whether the plaintiff's victory is "likely to add to the fund of information that citizens may use in making vital political choices." *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979), quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978).  Courts have interpreted this requirement relatively broadly and have found the public benefit test met where the interest involved is the vindication of the Act itself.  *Seegull Mfg. Co. v. NLRB*, 741 F.2d 882, 886 n.1 (6th Cir. 1984).

The next two prongs of the four part test, which focus on the commercial benefit to the plaintiff and the plaintiff's interest in the documents requested, are normally examined together given their relatedness. *Tax Analysts*, 965 F.2d at 1095.  Courts have held that when a litigant seeks disclosure of information for a commercial benefit or other personal reasons, an award of fees is usually inappropriate.  *Id.*  Conversely, it has been held that a finding of no commercial benefit to the plaintiff should weigh in favor of a fee award, "since the award section of the Act was intended to encourage complainants who lack substantial pecuniary incentives to pursue their claims." *United Association of Journeymen and Apprentices of Plumbing and Pipefitting Industry, Local 598 v. Department of Army, Corps of Engineers* (hereinafter "*Local 598*"), 841 F.2d 1459, 1461-62 (9th Cir. 1988).  The Senate Report on FOIA indicates that under this prong scholarly and journalistic interests are favored. *Freedom of Information Act and Amendments of 1974 (P.L. 93-502) Source*

---

[2]Although it has been found that these criteria are intended to provide guidance and direction rather than "airtight standards" (*Crooker v. U.S. Parole Comm'n*, 776 F.2d 366, 369 (1st Cir. 1985)), the D.C. Circuit has suggested that it might be an abuse of discretion for a district court to fail to consider each of the four factors. *LaSalle Extension university v. FTC*, 627 F.2d 481, 484 (D.C. Cir. 1980).

*Book*, House Committee on Government Operations, Senate Committee on the Judiciary, 94th Cong., 1st Sess. (March 1975) at 171.   However, courts have found that the private interest in obtaining information for use in a civil action may, even where the entity seeking the information is a wealthy corporation, be considered commercially neutral for the purposes of the attorney fee award provisions of FOIA.  *Seegull Mfg. Co. v. NLRB*, 741 F.2d at 886.  Indeed, in *Cazalas v. DOJ*, the Fifth Circuit acknowledged that the requester's strong personal interest in obtaining documents proving sex discrimination in her dismissal as Assistant U.S. Attorney, "is not necessarily inconsistent with an equally strong public interest in also receiving these items," because "it is in the public interest to discover, if true, that the Department of Justice is less than entirely just in its dealings."  *Cazales v. DOJ*, 709 F.2d 1051 (5th Cir. 1983).

The final prong of the four part test requires the court to ask whether there is a "reasonable basis" for the government's withholding of documents.  Under FOIA, the burden is on the agency withholding documents to sustain its action as reasonable.  5 U.S.C. § 552(a)(4)(B).  However, courts have held that to meet the reasonable basis requirement, the government need only have 'a colorable basis in law' for its position.  *Cotton v. Heyman*, 63 F.3d 1115, 1121 (D.C. Cir. 1995) (internal quotations and citations omitted).  Even where an agency is incorrect on a matter of law, its position may nonetheless be reasonable so long as there is some basis in valid legal precedent for the agency's position.  *Id.* at 1123.  However, courts will not find that an agency has a reasonable basis in law for withholding documents where it has been "recalcitrant or otherwise engaged in obdurate behavior."  *Cuneo v. Rumsfeld*, 553 F.2d at 1366.  Furthermore, FOIA "does not contain a statutory exception for administrative inefficiency." *Miller v. Department of State*, 779 F.2d 1378, 1390 (8th Cir. 1985).  Thus, an agency's representations that records were not produced more

quickly due to processing backlogs, confusion, and administrative error were considered by one court

to be "practical explanations, and not reasonable legal bases" for withholding documents.  *Id.*

> **A.    Plaintiff Is Entitled To Her Attorneys' Fees For Having Substantially Prevailing In Securing The February 10, 2003, August 8, 2003, And October 7, 2003 Releases Of Documents Pursuant To This Court's Orders.**

Plaintiff is entitled to all reasonable attorneys' fees for the work involved in obtaining the

December 16, 2003 Order, requiring Defendant to complete the expedited processing of Plaintiff's

FOIA requests, and for substantially prevailing on the issue of Defendant's withholding of Edmonds-

775, 776, and 777.  As this Court has itself recognized, there was a strong public interest in obtaining

the release of these documents.  *See,* Order (Dec.  3, 2002).  Plaintiff has received no direct

economic benefit from the release of the above mentioned documents, and her interests in obtaining

them to pursue her whistleblower allegations are, for purposes of determining entitlement to an

award of attorneys' fees, neutral.  Furthermore, the government put forth no reasonable basis in law

for its failure to release these documents.  Thus, under the four criteria mentioned in the Senate Bill

for the fee-shifting provisions of FOIA (S.Rep.No.93-854, 93d Cong., 2d Sess. 17 (1974)), Plaintiff

is entitled to an award of attorneys' fees.

> **1.    Plaintiff's suit has resulted in the release of information that substantially serves the public interest.**

The information released by Defendant pursuant to this Court's orders has conferred a

substantial benefit on the public.  The information sought by Plaintiff in her two FOIA requests, and

ultimately produced by Defendant related to Plaintiff's whistleblower allegations of corruption,

incompetence, and gross mismanagement within the FBI's language division, as well as Plaintiff's

allegations of retaliation for her whistleblowing activities.  As was recognized by this Court in its

December 3, 2002 decision and order granting Plaintiff's Motion for Partial Summary Judgment,

Plaintiff's allegations that are the subject of her FOIA requests, "relate to matters of wide public

concern that directly implicate possible questions about the government's integrity which affect

public confidence."  Order, at p. 7 (Dec. 3, 2002) (internal quotations and citations omitted).  The

Court noted that Plaintiff's whistleblower allegations, which find support in the documents

surrendered by Defendant FBI pursuant to this Court's orders, have raised significant concerns

within the national news media, and in the United States Senate regarding the FBI's security

procedures as well as the agency's very integrity.  Order, at pp. 6-7 (Dec. 3, 2003).  *Also see,* Exhibit

2, Colapinto Aff., ¶¶ 31-34. Additionally, Edmonds-775, 776, and 777 as well as other FOIA records

released by the FBI in this case related to the FBI's quality control measures for translations, and as

such were directly related to the very core of Plaintiff's highly publicized allegations of

incompetence and wrongdoing within the FBI's language division, as well as her allegations of

breakdowns in the agency's quality control procedures for translations.  *Id.* Thus, the documents

ultimately surrendered by Defendant as a result of Plaintiff's suit are highly relevant to the public's

confidence in the very integrity of the FBI.

Additionally, Plaintiff's FOIA suit has benefitted the public by vindicating the Act itself.  As

was recognized by the courts in *Seegull Mfg. Co. v. NLRB*, 741 F.2d at 886 n.1 and *Exner*, 443 F.

Supp. at 1353, the very vindication of the Act itself can be found to serve the public interest, such

that an award of attorneys' fees is appropriate.  The decision of the court in *Exner* highlights this

fact.  There, the District Court for the Southern District of California found that the plaintiff, in

bringing her suit to secure the expedited processing of her FOIA requests, "acted as a private attorney

general vindicating an important public policy."  *Exner*, 443 F. Supp. at 1353.  The instant suit has

substantially served the public interest in vindicating FOIA, because of the FBI's repeated failure to process Plaintiffs request for expedited processing.  Not only did Defendant fail to respond to Plaintiff to inform her of whether her request for expedited processing would be granted within the 10 day time limit mandated by 28 C.F.R. § 16.5(d)(4) and 5 U.S.C. § 552(a)(6)(E)(i)-(ii), it also failed to respond to her request within the 20 day period for "normal" FOIA requests.  In fact, the agency provided no response whatsoever to Plaintiff's repeated requests for expedited processing until over 70 days had passed from the date on which Plaintiff's original FOIA request had been sent. Even then the agency failed to provide Plaintiff with a determination as to whether her expedition requests would be granted or denied, but instead merely solicited her patience.  *See,* Ex. 4 in Plaintiff's Motion for Partial Summary Judgment.  Plaintiff's suit was necessary to vindicate the strong public interest in ensuring that certain requests for information be granted priority by the governmental agencies from which the information is requested, rather than simply ignored.

Furthermore, it is clearly contrary to the public interest for the government to be permitted to effectively force individuals such as Plaintiff to undergo the expensive process of litigating its failure to timely process expedition requests, by refusing to allow attorney's fees in cases, such as the present, where the government simply ignores a request for expedited processing.  To refuse to grant Plaintiff's attorneys' fees would in effect condone the Defendant's wrongful actions in failing to adhere to its own agency regulations regarding expedition requests.  This would run counter to the public interest in ensuring that government agencies adhere to the law and to their own regulations interpreting the agencies' duties under the law.

> **2.    Plaintiff's motivations in bringing the instant suit to obtain release of documents are not merely tied to private pecuniary interests, but rather are closely tied to the public interest.**

Although Plaintiff has brought this suit to obtain documents to pursue her whistleblower allegations against Defendant FBI, her interests in obtaining the documents are directly related to questions regarding the integrity and internal security of the FBI, in which there is a substantial public interest.  The mere fact that a plaintiff requesting release of documents may have some private interest in obtaining information does not disqualify the plaintiff from receiving an award of attorneys' fees under FOIA, and may be considered commercially neutral by the court determining whether such an award is proper.  *Seegull Mfg. Co. v. NLRB*, 741 F.2d at 886.  Thus, the mere fact that Plaintiff sought release of the documents that were the subject of her FOIA requests to pursue her whistleblower allegations does not prevent this court from awarding attorneys' fees and instead weighs in plaintiff's favor.

In fact, there is support for the position that in some cases the public interest can be substantially served by the release of documents to a FOIA plaintiff for use in a private civil action.  *See Cazalas v. DOJ*, 709 F.2d 1051 (5th Cir. 1983).  *Cazalas* involved a petition for attorneys fees, submitted by a prevailing plaintiff who had sought and obtained disclosure of documents which she intended to use in her sex discrimination suit against the Department of Justice.  The Fifth Circuit found that the fact that the appellant in *Cazalas* might obtain some pecuniary benefit in the form of a back pay award or reinstatement by using documents released to her as a result of her FOIA suit in her Title VII sex discrimination suit against the DOJ was "not the kind of commercial profit that Congress indicated was undeserving of special protection." *Cazalas*, 709 F.2d at 1054.  Furthermore, the court found that given the fact that Cazalas intended to use the documents released as a result of her FOIA claims to support her allegations of widespread sex discrimination within the DOJ, the court found that her private interests in the documents requested were not inconsistent with the

public interest.  *Id.*  As the court noted, "it is in the public interest to discover, if true, that the Department of Justice is less than entirely just in its dealings."  *Cazalas*, 709 F.2d at 1053.

Similarly, Plaintiff's interests in the documents that are the subject of her FOIA requests are not at all inconsistent with the public interest.  In fact, as this Court has itself recognized, Plaintiff's whistleblower allegations "directly implicate possible questions about the government's integrity which affect public confidence."  Order, at p. 7 (Dec. 3, 2002).  Furthermore, this Court noted that given the flurry of articles and television coverage Plaintiff's allegations could not be characterized as "personal to her" and of no "wider public concern."  More significantly, the continued media interest in the issues raised by Plaintiff and others regarding deficiencies and serious problems within government translation programs involved in the war on terrorism further supports a strong public interest in favor of an award of fees in this case.  *See,* Exhibits 9-11. Thus as in *Cazalas*, Plaintiff's interest in the documents obtained as a result of her FOIA suit are closely related to and entirely consistent with the public interest.

Additionally, while the public interest has clearly been benefitted by Plaintiff's suit, as set forth above, Plaintiff has not realized any pecuniary gain from Defendant's release of the documents. This very absence of pecuniary gain weighs in favor of a fee award, since, as was recognized by the court in *Local 598*, "the award section of the Act was intended to encourage complainants who lack substantial pecuniary incentives to pursue their claims."  *Local 598,* 841 F.2d at 1461-62.  Thus, an analysis of Plaintiff's interests in the documents that were the subject of her requests actually support an award of attorneys' fees in the instant case.

### 3.   Defendant's withholding of documents has no reasonable basis in law.

Plaintiff's request for attorneys' fees finds further support in the fact that Defendant's refusal

to process her expedition request in a timely manner and its further withholding of documents numbered Edmonds-775, 776, and 777 had no rational basis in law.  As was noted by the court in *Cuneo v. Rumsfeld*, courts will not find that an agency has a reasonable basis in law for withholding documents where it has been "recalcitrant or otherwise engaged in obdurate behavior."  *Cuneo v. Rumsfeld*, 553 F.2d at 1366.  Additionally, an agency's failure to timely produce records due to processing backlogs, confusion, and administrative error is *not* a reasonable legal basis for withholding documents.  *Miller v. Department of State*, 779 F.2d at 1390.

In 1996 Congress amended the FOIA statute to express provide a statutory basis for expedited processing of FOIA requests by requiring each agency to promulgate regulations providing for expedited processing.  *See,* 5 U.S.C. §552(a)(6)(E).  Additionally, Congress specifically provided for judicial review of any claim by a requester that an agency failed to expedite the processing of a FOIA request.  *See,* 5 U.S.C. §552(a)(6)(E)(iii) and (iv).

In the present case Defendants simply ignored Plaintiff's request for the expedited processing of her FOIA requests pursuant to the statutory and regulatory provisions governing FOIA expedition.  *See also,* 28 C.F.R. §16.5(d)(1).  This was more than a simple failure to produce documents due to a processing backlog.  Defendants did not even attempt to address Plaintiff's requests for expedited processing.  As such, Defendant produced no reasonable basis in law for its failure to timely process Plaintiff's expedition request and expedite the release of the requested records.  *Cf., Exner, supra.; Electronic Privacy Information Center v. FBI*, 865 F. Supp. 1, 2 (D.D.C. 1994); *Whitehurst v. FBI*, No. 96-572(GK) (D.D.C.), Mem. Op.  (Feb. 5, 1997).[3]  Moreover, this Court found that Plaintiff satisfied the statutory and regulatory provisions for FOIA expedition and granted Plaintiff's motion

---

[3]*See,* Exhibit 16 to Plaintiff's Motion for Partial Summary Judgment (Oct. 2, 2002).

for partial summary judgment on that issue and denied Defendant's motion for an *Open America* stay. *See,* Order (Dec. 3, 2002).

Furthermore, Defendant produced no basis in law for its withholding of Edmonds-775, 776, and 777. As this court found in its July 23, 2003 order, Defendants failed to provide adequate information to support their claims that these documents were exempt from disclosure pursuant to FOIA Exemption 2. *Edmonds*, 272 F.Supp.2d at 50. The affidavits submitted by Defendant following this order, in support of its claims that Edmonds-775 and 776 were exempt from disclosure pursuant to FOIA Exemption 2 contained no more than bare assertions that the documents were exempt from disclosure, and stated no rational basis in law or fact for the agency's continued withholding. Thus the Defendants have utterly failed to articulate a reasonable basis in law for both their failure to complete the expedited processing of Plaintiff's FOIA requests in a timely manner and their withholding of Edmonds-775, 776, and 777.

## III.   CALCULATION OF PLAINTIFF'S REASONABLE ATTORNEYS' FEES AND COSTS.

The calculation of a reasonable fee award is based on the "lodestar," which is determined by multiplying the number of hours the lawyers reasonably spent on the case by the lawyers' hourly rates. *See generally Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *Consumers Union v. Federal Reserve System*, 410 F.Supp. 63, 64 (D.D.C. 1975). The lawyer's hourly rate is measured by its "fair market value," which is determined by the prevailing local rate or the attorney's actual billing fee, whichever is higher. *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 187-88 (D.C. Cir. 1974). A FOIA plaintiff must establish first the reasonable hourly rate for the services of her attorneys. Then the plaintiff must establish the time her lawyers reasonably spent on her case. *National Association of*

*Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1323 (D.C. Cir. 1982) (hereinafter "*NACV*").

In *NACV* the D.C. Circuit Court of Appeals set forth the standards for the evidence that fee applicants are required to submit in order to prove the prevailing "market rates." The court noted that fee applicants may establish prevailing market rates by furnishing: (1) affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in similar cases; (2) affidavits detailing the actual rate that applicant's counsel can command in the market; (3) specific evidence of the attorney's actual billing practices during the relevant time period; and (4) recent fees awarded to attorneys of comparable reputation and experience performing similar work, provided that the applicant demonstrates that the fee awards were based on actual evidence of prevailing rates. *NACV*, 675 F.2d at 1324-1327.

Additionally, courts have approved of the use of the "Laffey Matrix," as a guide to the market rate for attorneys fees in the Baltimore-Washington area. *Save Our Cumberland Mountains v. Hodel*, 857, F.2d 1516, 1525 (D.C. Cir. 1988); *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983). In fact our Court of Appeals has declared that updated versions of the Laffey Matrix, which adjust the rates annually for inflation, may be relied on as evidence of the prevailing market rate for attorneys in the community. *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995).

A prevailing party must, after presenting sufficient evidence to establish the prevailing "market rate" for her reasonable attorneys fees, establish the number of reasonable hours of attorney work performed on the case. The D.C. Circuit has held that FOIA plaintiffs are not entitled to an attorneys' fees award for "nonproductive time or for time expended on issues on which plaintiff

ultimately did not prevail." *NACV*, 675 F.2d at 1327.  The court in *NACV* also set guidelines concerning the documentation required for determining the reasonableness of the hours for which compensation is sought.  The court noted that the reasonableness of the hours spent on litigation may be established by: (1) an attorney's daily time records; (2) written declarations from the attorneys describing in detail the precise nature of the work performed by them, the hours attributed to each category of work, the approximate number of hours discounted as potentially "duplicative" or "nonproductive" and the approximate dates when each category of work was performed; and (3) affidavits describing the history of the litigation, the litigation goals and strategies of the client, and the qualifications of each of the participating attorneys.  *NACV*, 675 F.2d at 1327 n.11 (quoting *Environmental Defense Fund, Inc. v. EPA*, 672 F.2d 42, 54 (D.C. Cir. 1982)).  By presenting such evidence a plaintiff may establish the number of hours of attorney work performed, and thereby establish her reasonable attorneys' fees.

In this case, Plaintiff is represented by the law firm of Kohn, Kohn & Colapinto, LLP ("Kohn firm"), which has substantial litigation experience under the FOIA and Privacy Act statutes in addition to extensive whistleblower litigation experience.   A thorough background on the qualifications of the partners and other attorneys who devoted on behalf of Plaintiff in this case are submitted herewith in the supporting affidavits.  *See,* Exhibits 1 - 4.

Additionally, earlier this year, the Kohn firm was featured by *The National Law Journal* as one of the top 25 Plaintiffs' firms in the United States.  *See,* Exhibit 5, Hechler, "The Plaintiffs' Hot List, Twenty-five go-to teams for when the going gets tough," *The National Law Journal,* pp.  S2 and S7 (July 21, 2003).

Despite the Kohn firm's expertise and qualifications which would justify hourly market rates

at a much higher level,  Plaintiff's counsel seek an award of fees in this case based on the current

adjusted Laffey Matrix rates published annually by the U.S. Attorneys Office.  Plaintiff's counsel

are requesting an award based on the current adjusted Laffey Matrix rates even though they have

been customarily awarded hourly rates substantially above the Laffey Matrix rates in other fee-

shifting cases, the Laffey rates are substantially lower than the Kohn firm's normal billing rates, and

the representation agreement entered into between Plaintiff and the Kohn firm permit fees to be

charged to Plaintiff in excess of the Laffey rates.  Plaintiff's counsel have agreed to this significant

reduction in the hourly rates in order to avoid additional litigation over this issue.

Based on the affidavits and supporting material submitted herewith, and the record of this

case, Plaintiff's counsel seek an award of fees based on the following attorneys and one law clerk

who devoted time to this case at the following rates:

| Name | Position | Rate | Hours | Total |
|------|----------|------|-------|-------|
| David K. Colapinto | Partner | $335 | 124.05 | $41,556.75 |
| Stephen M. Kohn | Partner | 335 | 11.71 | 3,922.85 |
| Christopher J. Wesser | Associate | 200 | 53.55 | 10,710.00 |
| Matthew H. Sorensen | Associate | 180 | 50.56 | 9,100.80 |
| V-Tsien Fan | Law Clerk | 105 | 7.25 | 761.25 |
| TOTAL | | | 247.62 | $66,051.65 |

As set forth more fully in the supporting affidavits, *see* Exhibits 1-4, Plaintiff's request for

an award of attorneys fees is well documented and satisfies the standards required by *NACV, supra.*

Additionally, the amount of fees requested is reasonable.  All of the work performed by Plaintiff's

counsel was reasonably necessary to obtain the court orders on expedited processing  and which

resulted in the of release of the FOIA documents at issue.  *See,* Ex.  2, Colapinto Aff., ¶¶ 24-30 and 35-36.  For example, Plaintiff's claims for expedited processing were aggressively opposed by the FBI from the filing of Plaintiff's FOIA requests in April of 2002, and through the litigation of Plaintiff's motion for partial summary judgment and Defendant's cross-motion for an *Open America* stay.  Plaintiff's counsel have also voluntarily excluded from this request any fees related to the opposition to the defendant's motion for summary judgment and other time that was not productive or which was duplicative.  *Id.*

Additionally, relying on the same standards of reasonableness, Plaintiff seeks an award for costs incurred by the Kohn firm in pursuing those claims referred to in this motion on which Plaintiff asserts she substantially prevailed.  These costs include the amounts advanced for the court filing fee, local transportation charges, delivery fees, postage, telephone and fax charges, photocopying costs, Westlaw charges.  All of these costs are itemized and set forth in pages 14-16 of Plaintiff's Exhibit 6, and Plaintiff requests an award of costs in the amount of $3,251.17 that were incurred by the Kohn firm in pursuing the claims on which Plaintiff prevailed.

## CONCLUSION

For the foregoing reasons, Plaintiff should be awarded a total of $69,302.82 in attorneys

fees and costs, based on $66,051.65 in attorneys fees for work performed by the Kohn firm and

$3,251.17 in litigation costs.

Respectfully submitted,

__/s/_____
David K. Colapinto, #416390
Stephen M. Kohn, #411513
Kohn, Kohn & Colapinto, LLP
3233 P Street, N.W.
Washington, D.C.  20007-2756
Phone: (202) 342-6980
Fax: (202) 342-6984
Attorneys for Plaintiff

December 12, 2003

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via the Court's ECF
system on this 12th day of December, 2003, upon:

Vesper Mei
U.S. Department of Justice
Civil Division – FPB
P.O. Box 883
Washington, D.C.  20044

By:   _____/s/_____
David K. Colapinto